UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DR. GERALD FINKEL, *as Chairman of the*
*Joint Industry Board of the Electrical Industry,*

                  Plaintiff,

          - against -

METROPOLITAN SIGN &
MAINTENANCE CORP.,

                 Defendant.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

09 CV 4416 (SJ)

On October 15, 2009, plaintiff Dr. Gerald Finkel, in his capacity as Chairman of the Joint

Industry Board of the Electrical Industry (the "Joint Board"), commenced this action against

defendant Metropolitan Sign & Maintenance Corporation ("Metropolitan"), pursuant to Sections

404, 409, 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended, 29

U.S.C. §§ 1104, 1109, 1132 and 1145 ("ERISA"), and the Labor Management Relations Act, 29

U.S.C. § 185(a) ("LMRA"), alleging that defendant failed to make required contributions to

various employee benefit funds as required by two collective bargaining agreements, which were

in effect from July 1, 2006 through June 30, 2009, and July 1, 2009 through June 30, 2010

(collectively, the "CBAs"). (Compl.[1] ¶¶ 1, 12, 23, 29).

     Despite proper service, defendant has not answered or otherwise moved in response to the

Complaint. On January 28, 2010, the Clerk of the Court entered a notation of default against

defendant, and plaintiff filed a motion for a default judgment.

     Presently pending before this Court on a referral from the district court is plaintiff's

---

[1]Citations to "Compl." refer to the Complaint, filed on October 15, 2009.

motion for a default judgment.

For the reasons set forth below, the Court respectfully recommends that plaintiff's motion for a default judgment be granted, and damages be awarded in the amount of $28,347.79.

<h1 style="text-align:center">BACKGROUND</h1>

Plaintiff is the Chairman of the Joint Board, which is a fiduciary and administrator of various employee benefit plans within the meaning of Sections 3(16)(A)(i) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A)(i), 1002(21)(A). (Compl. ¶ 5). These benefit plans were established pursuant to the CBAs between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO ("the Union"), and various employer associations in the electrical industry. (Id. ¶ 4). Defendant Metropolitan is a signatory to the CBAs, and an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Section 301(a) of LMRA, 29 U.S.C. § 185(a). (Id. ¶ 10).

Pursuant to the CBAs, Metropolitan is obligated to remit weekly contributions to the Joint Board for the following employee benefit funds, each of which is an employee benefit plan within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3): the Pension, Hospitalization and Benefit Plan (the "PHBP"), the Dental Benefit Fund (the "DEN"), the Educational and Cultural Trust Fund (the "ECT"), the Annuity Plan (the "ANN"), the Vacation-Holiday Unemployment Plan (the "VHUP"), the Health Reimbursement Account Plan (the "HRAP"), and the National Employees Benefit Fund (the "NEBF") (collectively, the "JIB Funds"). (Id. ¶ 5). Along with the obligation to make contributions to the JIB Funds, the CBAs require Metropolitan to submit weekly payroll reports ("Payroll Reports") to the Joint Board that indicate the name, gross wages, and hours worked for each employee performing "building trades type

2

jobs" ("covered employees") on whose behalf a contribution to the JIB Funds is made. (Id. ¶¶ 14, 18, 19).

Additionally, pursuant to the CBAs, Metropolitan is obligated to deduct a specified percentage from each covered employee's weekly wages and remit these amounts to the Deferred Salary Fund (the "401(k) Fund"). (Id. ¶ 6). Along with contributions to the 401(k) Fund, Metropolitan is required to submit weekly reports (the "401(k) Reports") to Putnam Investments,[2] a third party record keeper, setting forth the contributions being deducted from each employee's weekly wages and remitted to the 401(k) Fund. (Id. ¶¶ 6, 15).

Plaintiff alleges that defendant has neither submitted the required reports nor paid the required contributions for employees performing "building trades type jobs" in accordance with the CBAs. (Id. ¶¶ 22-29). Specifically, plaintiff alleges that defendant has failed to make the required contributions to the JIB Funds and submit the required Payroll Reports for the weeks ending August 26, 2009, September 16, 2009 through November 18, 2009, and February 3, 2010 through May 5, 2010. (Adler Supp. Decl.[3] ¶ 8). Defendant has also failed to make required contributions to the 401(k) Fund and submit the required 401(k) Reports for the weeks ending August 26, 2009, and January 6, 2010 through May 5, 2010.[4] (Russo Decl. ¶ 27).

_____

[2]While plaintiff's Complaint and certain materials submitted in support of his Motion for Default Judgment state that the 401(k) Reports are to be submitted to Putnam Investments, the Court notes that another document submitted by plaintiff suggests that the 401(k) Reports are to be submitted to Mercer Trust Company. (See Declaration of Rocco Russo, Esq., in Support of Plaintiff's Motion for Default Judgment, filed on May 14, 2010 ("Russo Decl.") ¶ 19). This appears to be a typographical error.

[3]Citations to "Adler Supp. Decl." refer to the Supplemental Declaration of Michael S. Adler, Esq., in support of plaintiff's Motion for Default Judgment, filed on May 14, 2010.

[4]Although the Declaration of Rocco Russo states that defendant is liable for unpaid contributions to the 401(k) Fund for the weeks ending August 26, 2009, and January 6, 2010 through May 5, 2010, the Supplemental Affidavit of Michael S. Adler, Esq., states that defendant

3

Additionally, plaintiff alleges that although Metropolitan made some contributions to the VHUP benefit plan and the 401(k) Fund for the weeks ending April 15, 2009, April 29, 2009 through May 6, 2009, and May 20, 2009, defendant failed to remit the full amounts owed for those periods. (Adler Supp. Decl. ¶ 10). Due to defendant's failure to submit the required reports, however, the Joint Board is unable to determine the exact amount of contributions owed, and has instead estimated the contributions due based on the last reports submitted.[5] (Russo Decl. ¶¶ 24-26, 28).

Plaintiff also alleges that defendant owes interest on unpaid contributions to the 401(k) Fund that defendant paid late both prior and subsequent to the commencement of this action, specifically for the weeks ending April 8, 2009 through April 15, 2009, April 29, 2009 through July 8, 2009, July 29, 2009 through September 9, 2009, and September 23, 2009 through December 30, 2009. (Id. ¶¶ 36-37). Additionally, plaintiff alleges that defendant owes interest on late-paid contributions to the JIB Funds for the weeks ending November 25, 2009 through January 27, 2010. (Id. ¶ 35).

On October 15, 2009, plaintiff commenced this action on behalf of the Joint Board, seeking to recover unpaid contributions, interest on unpaid and late-paid contributions, liquidated damages, attorney's fees, and costs of the action.[6] (Compl. ¶¶ A-G). On October 29, 2009,

---

is also liable for unpaid contributions to the 401(k) Fund for the weeks ending September 16, 2009 through November 18, 2009. (Adler Supp. Decl. ¶ 8). The inclusion of these additional dates appears to be a typographical error because it cites to Russo's Declaration which does not state that defendant is liable for that period.

[5] The CBAs fail to provide a specific mechanism for the Joint Board to estimate the contributions owed where the employer has fail to submit the required Payroll Reports and 401(k) Reports. See discussion infra at page 12.

[6] In the Complaint, plaintiff also sought to compel the submission of certain delinquent Payroll Reports and 401(k) Reports. Since plaintiff has not pursued this relief in his Motion for

4

plaintiff served a copy of the Summons and Complaint on defendant through the New York Secretary of the State. Defendant has failed to file an Answer, respond to plaintiff's Complaint, or otherwise appear and defend this action.

On January 28, 2010, the Clerk of the Court entered a notation of default against defendant, and plaintiff thereafter filed a motion for default judgment. Having received no opposition papers from defendant, and noting that defendant failed to appear for the inquest hearing held on March 17, 2010, despite having received due notice thereof, the Court has reviewed only the plaintiff's submissions.

## DISCUSSION

I.   Default Judgment

   A. Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of the Court automatically enters the default pursuant to Rule 55(a) by notation of the party's default on the clerk's record of the case. See id. Second, after the Clerk of the Court enters default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter default judgment. See Fed. R. Civ. P. 55(b).

---

Default Judgment, the Court has not considered whether it is appropriate to compel the production of such reports at this time.

In determining whether to enter a default judgment, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. Accordingly, simply because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including 1) whether the grounds for default are clearly established; 2) whether the claims were pled in the Complaint thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and 3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact

remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff

has been substantially prejudiced by the delay involved, and whether the default judgment might

have a harsh effect on the defendant.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d

Cir. 1981).

B. Entry of Default Judgment

1. Liability for Damages Alleged in Complaint

In this case, plaintiff alleges in the Complaint that defendant violated ERISA and the

terms of the CBAs by failing to make required contributions to the JIB Funds and the 401(k)

Fund, and by failing to submit the required Payroll Reports and 401(k) Reports.  (Compl. ¶¶ 5-6).

Pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, defendant is required to make weekly

contributions to the JIB Funds and the 401(k) Fund in accordance with the terms of the CBAs.

Under the CBAs, defendant is also required to submit weekly Payroll Reports to the Joint Board

and 401(k) Reports to Putnam Investments.  (Id. ¶¶ 6, 14-15).  Accordingly, plaintiff seeks to

recover an amount equivalent to the unpaid and underpaid contributions, together with interest,

and liquidated damages owed for the delinquent weeks alleged in the Complaint, as well as

attorney's fees and costs, pursuant to 29 U.S.C. § 1132(g)(2).  (Compl. ¶¶ B-G).

Based on a review of the allegations in the Complaint, which are undisputed at this time,

and the supporting documentation submitted in connection with this inquest, including the terms

of the CBAs (see Sessa Decl.,[7] Ex. B at 2, Ex. C at 19, Ex. I at 10), the Court finds that plaintiff

has sufficiently established liability as to warrant entry of a default judgment for the damages

---

[7]Citations to "Sessa Decl." refer to the Declaration of Christina A. Sessa, Esq., in Support
of plaintiff's Motion for Default Judgment, filed on January 28, 2010.

requested in the Complaint.  See 29 U.S.C. § 1132(g)(2).

Not only has plaintiff stated a valid claim, but it is beyond dispute that defendant is in default.  Defendant has not responded to the Complaint, nor has defendant even appeared in this action by counsel.  Failure to obtain counsel in this case constitutes a failure to defend because defendant, being a corporation, cannot proceed in federal court pro se.  See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only).  Moreover, despite proper service, defendant has not only failed to file an Answer or otherwise move with respect to the Complaint, but defendant has also failed to respond either to plaintiff's Motion for a Default Judgment or the Order from this Court relating to the calculation of damages, see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion"), and thus, plaintiff's evidence on damages is undisputed.

Finally, the amount of money involved in this case is not significant, unlike a case in which there are potentially millions of dollars involved.  See id., at *2 (declining to enter default judgment, as plaintiff's damages request ran well into the millions of dollars, and giving defendant an opportunity to contest the default judgment).

Given the numerous opportunities afforded defendant, and its apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay further.  Accordingly, it is respectfully recommended that plaintiff's motion for entry of a default judgment be granted.

8

## 2. Liability for Damages Accrued After Complaint was Filed

Plaintiff also seeks to recover delinquent contributions, and interest and liquidated damages on unpaid and late-paid contributions that became due subsequent to the commencement of this lawsuit. It is well settled that a plaintiff may recover damages with respect to delinquent contributions that accrue subsequent to the commencement of a lawsuit, when the complaint provides adequate notice to the defendant that plaintiff will seek such unpaid contributions. See Finkel v. Triple A Group, Inc., No. 07 CV 2653, 2010 WL 1688359, at *3 (E.D.N.Y. Apr. 27, 2010).

In this case, the Complaint expressly states that plaintiff seeks payment of required contributions "that are unpaid or underpaid as of the date judgement is entered." (Compl. ¶ B). Under these circumstances, the Court finds that the Complaint provided defendant with sufficient notice that plaintiff would seek unpaid contributions that accrued after the action was filed. See Finkel v. Triple A Group, Inc., 2010 WL 1688359, at *3 (holding defendants liable for damages in an ERISA action that accrued after the filing of the complaint, where the complaint sought amounts due for unpaid contributions "as of the date judgment is entered") (internal quotations omitted). Accordingly, the Court respectfully recommends that plaintiff's motion for entry of a default judgment be granted as to the claim for delinquent contributions that accrued subsequent to the commencement of this lawsuit.

Furthermore, while the Complaint does not explicitly request interest or liquidated damages on late-paid contributions, plaintiff in this case specifically demanded relief in the form of interest and liquidated damages on late-paid contributions "*after* the filing of the complaint." (Compl. ¶¶ E-F (emphasis added)). Based on this request, the Court respectfully recommends the entry of a default judgment for interest and liquidated damages on such contributions because

defendant was on notice that plaintiff would seek interest and liquidated damages for late-paid contributions that accrued after the lawsuit was filed.

II.  Damages

  A. Legal Standard

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. The burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Defendants who default are entitled to discovery regarding unliquidated damages. See Securities & Exch. Comm'n v. Wang, No. 88 CV 4461, 1989 WL 135558, at *1 (S.D.N.Y. May 22, 1989); Clague v. Bednarski, 105 F.R.D. 552, 552 (E.D.N.Y. 1985). When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:

> [i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper . . . .

Fed. R. Civ. P. 55(b)(2). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in

10

favor of the plan.  See 29 U.S.C. § 1132(g)(2).  These damages include:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of −
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

Id.; see also Iron Workers Dist. Council of Western New York and Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505-07 (2d Cir. 1995).

## B.  Monetary Damages

In this case, where plaintiff appeared for an inquest hearing on March 17, 2010, and has filed reasonably detailed materials pertaining to the damages incurred, and defendant has failed to make an appearance, or otherwise respond and present evidence on the issue of damages, the Court is able to make an informed recommendation regarding damages.

### 1.  Unpaid Contributions

Plaintiff seeks damages for unpaid contributions that were alleged in the Complaint, as well as unpaid contributions that accrued subsequent to the filing of the Complaint.  Defendant has not submitted the required Payroll Reports and 401(k) Reports, which indicate wages and hours worked by covered employees, for the weeks in which contributions were unpaid.  As a result, since the CBAs fail to provide a mechanism for calculating unpaid contributions when the

employer does not submit the required reports, the Court may estimate the amount of contributions owed based on earlier payroll reports submitted. See Finkel v. Triple A Group, Inc., 2010 WL 1688359, at *5 (estimating contributions owed by referring to earlier payroll reports when the employer failed to submit required payroll reports); Jacobson v. Empire Elec. Contractors, No. 05 CV 1713, 2008 WL 819948, at *3 (E.D.N.Y. Mar. 25, 2008). In this case, the Court turns to the last reports submitted before the delinquent time period to estimate the amount of contributions owed, and multiplies those amounts by the number of weeks in which contributions were unpaid. See Finkel v. Triple A Group, Inc., 2010 WL 1688359, at *5. This is the same method used in Finkel v. Triple A Group, Inc., in which the court estimated the contributions due for weeks in which payroll reports were not submitted by multiplying the amounts indicated in earlier payroll reports by the number of weeks for which contributions were unpaid. See id.

A review of the record reveals that each Payroll Report includes the standard gross wages and total clocked hours of covered employees for a particular week, as well as a list of the amounts due to each benefit plan for that week. (Russo Decl. ¶ 15). The Payroll Reports also identify the total amount of contributions due to the Joint Board in a field labeled "Make Checks Payable to Jt. Ind. Board For Items 1-8," not including the amount in contributions owed for the NEBF benefit plan, which is identified in a separate field. (Id. ¶ 16, Ex. A at 15). Similarly, each 401(k) Report lists the weeks for which a 401(k) Fund contribution is due, the dates contributions are made, and the amounts due in contributions to the 401(k) Fund. (Id. ¶ 21, Ex. B at 1).

### a) Unpaid Contributions Alleged in Complaint

Based on a review of plaintiff's papers submitted in connection with this inquest, it appears that plaintiff has requested an award of $1,846.50 in damages for unpaid contributions to the JIB Funds for the weeks ending August 26, 2009, and September 16, 2009 through September 30, 2009, and an award of $49.59 in damages for unpaid contributions to the 401(k) Fund for the week ending August 26, 2009.[8] (See Compl. ¶ 25; Russo Decl., Ex. C).

In determining the appropriate amount of damages to award, the Court turns to the Payroll Reports and 401(k) Reports. As previously discussed, because defendant has failed to submit the required reports for the weeks where contributions were allegedly unpaid, the Court may rely on earlier Payroll Reports and 401(k) Reports submitted by defendant to estimate the amounts owed. See Finkel v. Triple A Group, Inc., 2010 WL 1688359, at *5. The last Payroll Reports submitted by defendant covered the weeks ending August 19, 2009 and September 9, 2009, respectively, and the last 401(k) Reports covered the week ending August 19, 2009. (See Russo Decl. ¶¶ 25, 28).

A review of the Payroll Reports for the weeks ending August 19, 2009 and September 9, 2009 indicates that defendant remitted contributions to the JIB Funds in the amounts of $294.66, and $517.28, respectively. (See Russo Decl., Exs. A, C). Relying on these figures, and noting that nothing in the record suggests that these figures would be materially different for subsequent

---

[8]Although the Complaint alleged that Metropolitan failed to remit required contributions to the JIB Funds for the weeks ending August 12, 2009 through September 30, 2009, and the 401(k) Fund for the weeks ending August 26, 2009 through September 30, 2009, plaintiff's Memorandum of Law in Support of its Motion for Default Judgment, dated January 26, 2010, indicated that contributions for some of the weeks referenced in the Complaint were paid after the Complaint was filed. As a result, the Court has only considered delinquent contributions for those weeks that plaintiff in its most recent Memorandum of Law alleges were not paid.

13

weeks, the Court estimates that defendant owed contributions to the JIB Fund in the amount of $294.66 for the week ending August 26, 2009, and $517.28 per week for the weeks ending September 16, 23, and 30, 2009. See Finkel v. Triple A Group, Inc., 2010 WL 1688359, at *5. Similarly, based on the 401(k) Report for the week ending August 19, 2009, the Court estimates that defendant owed $49.59 in contributions to the 401(k) Fund for the week ending August 26, 2009. See id.

Accordingly, based on the Court's independent review of the record, including plaintiff's estimates of the contributions owed, which seem reasonable, the Court respectfully recommends that plaintiff be awarded damages for delinquent contributions to the JIB Funds in the amount of $1,846.50 for the weeks ending August 26, 2009, and September 16, 2009 through September 30, 2009, and $49.59 for unpaid contributions to the 401(k) Fund for the week ending August 26, 2009, calculated as follows:

| JIB Funds | Unpaid Contributions |
|---|---|
| PHBP | $1,161.28 |
| DEN | $126.15 |
| ANN | $242.00 |
| ECT | $13.47 |
| VHUP | $202.41 |
| NEBF | $101.19 |
| **Total** | **$1,846.50** |

| 401(k) Fund | Unpaid Contributions |
|---|---|
| **Total** | **$49.59** |

b) <u>Unpaid Contributions Accrued After Complaint was Filed</u>

Plaintiff alleges that defendant failed to make $10,618.30 in required contributions to the JIB Funds for the weeks ending October 7, 2009 through November 18, 2009, and February 3, 2010 through May 5, 2010, and failed to remit $2,810.16 in required contributions to the 401(k) Fund for the weeks ending January 6, 2010 through May 5, 2010. (<u>See</u> Russo Decl. ¶¶ 24, 27, Ex. C).

A review of the Payroll Reports for the weeks ending September 9, 2009, and January 27, 2010, indicates that defendant remitted contributions to the JIB Funds in the amounts of $517.28 and $499.81, respectively. Relying on these figures, the Court estimates that defendant owed contributions to the JIB Fund in the amount of $517.28 per week during the period of October 7, 2009 through November 18, 2009, and $499.81 per week during the period of February 3, 2010 through May 5, 2010. <u>See</u> <u>Finkel v. Triple A Group, Inc.</u>, 2010 WL 1688359, at *5. Additionally, based on the 401(k) Report for the week ending December 30, 2009, which indicates that defendant remitted contributions to the 401(k) Fund in the amount of $156.12, the Court estimates that defendant owed $156.12 to the 401(k) Fund each week during the period of January 6, 2010 through May 5, 2010. <u>See</u> <u>id.</u>

Based on the Court's review of the record, including plaintiff's estimates of the contributions owed after the Complaint was filed, which seem reasonable, the Court respectfully recommends that plaintiff be awarded delinquent contributions in the amount of $10,618.30 to the JIB Funds, and $2,810.16 to the 401(k) Fund, calculated as follows:

| JIB Funds | Unpaid Contributions |
|-----------|---------------------|
| PHBP | $6,459.04 |
| DEN | $701.68 |
| ANN | $1,694.00 |
| ECT | $74.97 |
| VHUP | $1,125.81 |
| NEBF | $562.80 |
| **Total** | **$10,618.30** |

| 401(k) Fund | Unpaid Contributions |
|-------------|---------------------|
| **Total** | **$2,810.16** |

c) Summary

Accordingly, for the reasons stated above, the Court respectfully recommends that plaintiff be awarded a total of $15,324.55 in unpaid contributions, calculated as follows:

| Category | | Unpaid Contributions |
|----------|---|---------------------|
| JIB Funds | Alleged in the Complaint | $1,846.50 |
| | Accrued after Complaint filed | $10,618.30 |
| 401(k) Fund | Alleged in Complaint | $49.59 |
| | Accrued after Complaint Filed | $2,810.16 |
| **Total** | | **$15,324.55** |

## 2. Underpaid Contributions

Plaintiff also alleges that defendant owes $611.06 in underpaid contributions to the VHUP benefit plan and the 401(k) Fund for the weeks ending April 15 and 29, 2009, and May 6 and 20, 2009. (Compl. ¶ 28). As detailed in Exhibit O of plaintiff's papers submitted in connection with this inquest,[9] defendant owes $575.81 to the VHUP Fund and $35.25 to the 401(k) Fund for the weeks ending April 15 and 29, 2009, and May 6 and 20, 2009.[10] (Sessa Decl., Ex. O). Based on a review of the records submitted in connection with plaintiff's motion for a default judgment, the Court respectfully recommends that plaintiff be awarded the amount of $611.06 in underpaid contributions, calculated as follows:

| Benefit Fund | Underpaid Contributions |
|---|---|
| VHUP | $575.81 |
| 401(k) Fund | $35.25 |
| **Total** | **$611.06** |

---

[9]Although this Exhibit has no title, it appears to the Court that this document is a genuine business record maintained by the Joint Board. (See Sessa Decl. ¶ 21 (stating that each of the documents attached to the declaration, including Exhibit O, were copied from the Joint Board's internal business records)). Therefore, the Court finds that this business record provides sufficient evidence to award damages for underpaid contributions.

[10]It appears that there is a mathematical error in Exhibit O for the total amount owed in underpaid contributions to the 401(k) Fund. While the record states that defendant owed $35.25, (Sessa Decl., Ex. O), it appears that defendant in fact owed $35.26. The Court, however, has only considered the amount requested by plaintiff.

3. Interest

Under ERISA and the CBAs, plaintiff is also entitled to an award of: 1) interest accrued during the period of the delinquency; 2) interest accrued from the date of the commencement of the action through the date of judgment; and 3) interest from the date of judgment until the entire amount is paid. See 29 U.S.C. §§ 1132(a)(9), (g)(2)(B); (Sessa Decl., Ex. B at 2, Ex. C at 19, Ex. I at 10).

Under Section 1132(g)(2) of ERISA, the interest rate is calculated "using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). In this case, the only benefit plan that provides for a specific interest is the NEBF plan, which has established a ten percent interest rate. (See Sessa Decl., Ex. J at 11). Accordingly, interest for the remaining benefit plans will be calculated using the rates prescribed under Section 6621 of Title 26.

a) Interest Owed to the NEBF Fund

The NEBF benefit plan provides that the ten perfect interest rate is to be "compounded monthly throughout the period of delinquency." (Id.) In its papers submitted in connection with this inquest, plaintiff provides two formulas for calculating compound interest: one in its charts detailing its calculations (see Adler Supp. Decl., Ex. A at 11-12), and another in its citation to a website providing information on the formula for compound interest. (See id. at 11 ("http://support.microsoft.com/kb/213907")).

Based on a review of the record, the Court, however, is unable to duplicate the interest calculations provided by plaintiff. Despite efforts to use the two different formulas provided, the Court has been unable to verify the plaintiff's interest calculations for unpaid contributions and

late paid contributions to the NEBF Fund. Since it is unclear how plaintiff has determined the amount of interest requested as of May 14, 2010, the Court has not been able to calculate the interest for the NEBF plan that has accumulated since plaintiff submitted its papers on May 14, 2010.

Accordingly, the Court is unable at this time to recommend a specific amount be awarded for interest owed on unpaid and late-paid contributions to the NEBF Fund. Instead, the Court respectfully recommends that plaintiff be given an opportunity to submit supplemental papers that detail the interest calculations proposed for the NEBF Fund and the methodology employed to calculate those amounts. The Court further recommends that plaintiff be directed to update the interest calculations to include interest accrued to the date of this Report and Recommendation.

### b) Interest Owed to the Remaining JIB and 401(k) Funds

Plaintiff requests a total of $209.69 in interest owed on unpaid contributions to the JIB Funds for the weeks ending August 26, 2009, September 16, 2009 through November 18, 2009, and February 3, 2010 through May 5, 2010, and to the 401(k) Fund for the weeks ending August 26, 2009, and January 6, 2010 through May 5, 2010. (Id. ¶ 13). As discussed above, interest is to be calculated at the rate of four percent in accordance with 26 U.S.C. § 6621.[11]

Based on a review of plaintiff's reasonably detailed interest calculations owed for unpaid contributions, which appear to be correct, the Court respectfully recommends that plaintiff be awarded $325.29 in interest on unpaid contributions to the 401(k) Fund and to the JIB Funds, excluding the NEBF Fund, and the 401(k) Fund. This figure includes interest that has accrued up

---

[11] Section 6621 of Title 26 of the United States Code provides for an interest rate of 4% for all of the weeks in which contributions were unpaid, underpaid, or paid late by defendant.

until the date of this Report and Recommendation, and is calculated as follows:[12]

| Interest on Unpaid Contributions to the JIB Funds (excluding NEBF) | | | | |
|---|---|---|---|---|
| Weeks Ending | Contributions Owed | Rate | Days to Present | Interest |
| 8/26/2009 | $278.85 | 4% | 351 | $10.73 |
| 9/16/2009 | $488.82 | 4% | 330 | $17.68 |
| 9/23/2009 | $488.82 | 4% | 323 | $17.20 |
| 9/30/2009 | $488.82 | 4% | 316 | $16.93 |
| 10/7/2009 | $488.82 | 4% | 309 | $16.55 |
| 10/14/2009 | $488.82 | 4% | 302 | $16.18 |
| 10/21/2009 | $488.82 | 4% | 295 | $15.80 |
| 10/28/2009 | $488.82 | 4% | 288 | $15.43 |
| 11/4/2009 | $488.82 | 4% | 281 | $15.05 |
| 11/11/2009 | $488.82 | 4% | 274 | $14.68 |
| 11/18/2009 | $488.82 | 4% | 267 | $14.30 |
| 2/3/2010 | $473.84 | 4% | 189 | $9.81 |
| 2/10/2010 | $473.84 | 4% | 182 | $9.45 |
| 2/17/2010 | $473.84 | 4% | 175 | $9.09 |
| 2/24/2010 | $473.84 | 4% | 168 | $8.72 |
| 3/3/2010 | $473.84 | 4% | 161 | $8.36 |
| 3/10/2010 | $473.84 | 4% | 154 | $8.00 |
| 3/17/2010 | $473.84 | 4% | 147 | $7.63 |
| 3/24/2010 | $473.84 | 4% | 140 | $7.27 |

---

[12]Interest on unpaid contributions to the JIB Funds and the 401(k) Fund was calculated in three steps: 1) multiplying the amount in contributions owed by the applicable interest rate; 2) multiplying that product by the days accrued between the date the contributions were due and the date interest was calculated, see Finkel v. Triple A Group, Inc., 2010 WL 1688359, at *7 (holding that interest accrues from "the date the contributions became due and owing"); and 3) dividing the final product by 365. To the extent plaintiff in his motion papers may have requested a nominal award of per diem interest in addition to the interest discussed herein, the Court respectfully recommends that this request be denied as cumulative.

| | | | | |
|---|---|---|---|---|
| 3/31/2010 | $473.84 | 4% | 133 | $6.91 |
| 4/7/2010 | $473.84 | 4% | 126 | $6.54 |
| 4/14/2010 | $473.84 | 4% | 119 | $6.18 |
| 4/21/2010 | $473.84 | 4% | 112 | $5.82 |
| 4/28/2010 | $473.84 | 4% | 105 | $5.45 |
| 5/5/2010 | $473.84 | 4% | 98 | $5.09 |
| **Total** | | | | **$274.85** |

| Interest on Unpaid Contributions to 401(k) Fund | | | | |
|---|---|---|---|---|
| Weeks Ending | Contributions Owed | Rate | Days to Present | Interest |
| 8/26/2009 | $49.59 | 4% | 351 | $1.91 |
| 1/6/2010 | $156.12 | 4% | 217 | $3.71 |
| 1/13/2010 | $156.12 | 4% | 210 | $3.59 |
| 1/20/2010 | $156.12 | 4% | 203 | $3.47 |
| 1/27/2010 | $156.12 | 4% | 197 | $3.37 |
| 2/3/2010 | $156.12 | 4% | 189 | $3.23 |
| 2/10/2010 | $156.12 | 4% | 182 | $3.11 |
| 2/17/2010 | $156.12 | 4% | 175 | $2.99 |
| 2/24/2010 | $156.12 | 4% | 168 | $2.87 |
| 3/3/2010 | $156.12 | 4% | 161 | $2.75 |
| 3/10/2010 | $156.12 | 4% | 154 | $2.63 |
| 3/17/2010 | $156.12 | 4% | 147 | $2.52 |
| 3/24/2010 | $156.12 | 4% | 140 | $2.40 |
| 3/31/2010 | $156.12 | 4% | 133 | $2.28 |
| 4/7/2010 | $156.12 | 4% | 127 | $2.17 |
| 4/14/2010 | $156.12 | 4% | 119 | $2.04 |
| 4/21/2010 | $156.12 | 4% | 112 | $1.92 |
| 4/28/2010 | $156.12 | 4% | 105 | $1.80 |
| 5/5/2010 | $156.12 | 4% | 98 | $1.68 |

| | |
|---|---|
| **Total** | **$50.44** |

b) <u>Interest on Underpaid Contributions</u>

Plaintiff requests that $25.25 be awarded for interest on underpaid contributions to the

VHUP plan and the 401(k) Fund for the weeks ending April 15 and 29, 2009, and May 6 and 20,

2009.[13] (Adler Supp. Decl. ¶ 15). The Court calculates the interest owed for the VHUP plan and

the 401(k) Fund using an interest rate of 4%. <u>See</u> 26 U.S.C. § 6621.

Based on a review of plaintiff's reasonably detailed calculations of interest owed for

unpaid contributions, which appear to be correct, the Court respectfully recommends that

plaintiff be awarded a total amount of $31.00 in interest on underpaid contributions for the weeks

ending April 15 and 29, 2009, and May 6 and 20, 2009. This figure includes interest that has

accrued up until the date of this Report and Recommendation, and is calculated as follows:[14]

---

[13]It appears that plaintiff has miscalculated the interest owed on underpaid contributions, listing $17.80 although $25.25 appears to be the correct amount. (<u>See</u> Adler Supp. Decl. ¶ 15). However, plaintiff did request the correct amount of $25.25 later in a chart summarizing the total amounts sought in this action. (<u>Id.</u> ¶ 37). Therefore, given the nominal difference between the two figures, the Court construes plaintiff's request for $25.25 of interest on underpaid contributions.

[14]Interest on underpaid contributions is to be calculated using the same methodology described <u>supra</u> at note 12.

| Interest on Underpaid Contributions to VHUP plan and the 401(k) Fund | | | | |
|---|---|---|---|---|
| Weeks Ending | Contributions Owed | Rate | Days to Present | Interest Owed |
| 4/15/2009 | $95.32 | 4% | 475 | $5.05 |
| 4/29/2009 | $146.57 | 4% | 461 | $7.53 |
| 5/6/2009 | $189.00 | 4% | 454 | $9.57 |
| 5/20/2009 | $180.18 | 4% | 4340 | $8.85 |
| **Total** | | | | **$31.00** |

    c) <u>Interest on Late-Paid Contributions</u>

Plaintiff also requests interest on late-paid contributions to the JIB Funds for the weeks ending November 25, 2009 through January 27, 2010, and interest on late-paid contributions to the 401(k) Fund for the weeks ending April 8, 2009 through April 15, 2009, April 29, 2009 through July 8, 2009, July 29, 2009 through September 9, 2009, and September 23, 2009 through December 30, 2009. (Alder Supp. Decl. ¶¶ 16-18). The Court calculates the interest using an interest rate of 4%. <u>See</u> 26 U.S.C. § 6621.

Based on a review of plaintiff's reasonably detailed calculations of interest on late-paid contributions, which appear to be correct, the Court respectfully recommends that plaintiff be awarded $44.33 in interest on late-paid contributions to the JIB Funds, excluding the NEBF plan, for the weeks ending November 25, 2009 through January 27, 2010, calculated as follows:[15]

---

[15]Interest on late-paid contributions was calculated in three steps: 1) multiplying the amount paid late by the applicable interest rate; 2) multiplying that product by the days accrued between the date the contributions were due, and the date they were paid; and 3) dividing the final product by 365.

| Interest on Late-Paid Contributions to the JIB Funds, excluding NEBF | | | | |
|---|---|---|---|---|
| Weeks Ending | Amount Paid Late | Rate | Days Accrued | Interest |
| 11/25/2009 | $418.30 | 4% | 110 | $5.41 |
| 12/2/2009 | $400.20 | 4% | 103 | $4.87 |
| 12/9/2009 | $418.30 | 4% | 96 | $4.77 |
| 12/16/2009 | $680.40 | 4% | 89 | $7.23 |
| 12/23/2009 | $490.62 | 4% | 82 | $4.84 |
| 12/30/2009 | $248.41 | 4% | 75 | $2.26 |
| 1/6/2010 | $425.49 | 4% | 69 | $3.59 |
| 1/13/2010 | $675.18 | 4% | 61 | $5.11 |
| 1/20/2010 | $490.62 | 4% | 54 | $3.39 |
| 1/27/2010 | $473.84 | 4% | 47 | $2.86 |
| **Total** | | | | **$44.33** |

Additionally, the Court respectfully recommends that plaintiff be awarded $9.12 in interest for late-paid contributions to the 401(k) Fund for the weeks ending September 23, 2009 through December 30, 2009, calculated as follows:

| Interest on Late-Paid Contributions to the 401(k) Fund | | | | |
|---|---|---|---|---|
| Weeks Ending | Amount Paid Late | Rate | Days Accrued | Interest |
| 9/23/2009 | $81.34 | 4% | 31 | $0.28 |
| 9/30/2009 | $81.12 | 4% | 24 | $0.21 |
| 10/7/2009 | $49.55 | 4% | 17 | $0.09 |
| 10/14/2009 | $43.13 | 4% | 10 | $0.05 |
| 10/21/2009 | $109.71 | 4% | 72 | $0.87 |
| 10/28/2009 | $106.51 | 4% | 65 | $0.76 |
| 11/4/2009 | $79.83 | 4% | 58 | $0.51 |
| 11/11/2009 | $76.39 | 4% | 51 | $0.43 |

| 11/18/2009 | $64.07 | 4% | 44 | $0.31 |
|---|---|---|---|---|
| 11/25/2009 | $179.08 | 4% | 37 | $0.73 |
| 12/2/2009 | $262.03 | 4% | 30 | $0.86 |
| 12/9/2009 | $189.31 | 4% | 23 | $0.48 |
| 12/16/2009 | $313.30 | 4% | 52 | $1.79 |
| 12/23/2009 | $222.09 | 4% | 45 | $1.10 |
| 12/30/2009 | $156.12 | 4% | 38 | $0.65 |
| **Total** | | | | **$9.12** |

Finally, the Court respectfully recommends that plaintiff be awarded the requested amount of $6.81 in interest on late-paid contributions to the 401(k) Fund for the weeks ending April 8, 2009 through April 15, 2009, April 29, 2009 through July 8, 2009, and July 29, 2009 through September 9, 2009.[16] (Adler Supp. Decl. ¶ 18).

### d) Summary

Accordingly, the Court respectfully recommends that plaintiff be awarded a total amount of $416.55 in interest on the delinquent contributions, plus the interest that will accrue from the date of this Report and Recommendation until the entry of judgment, together with post-judgment interest pursuant to 28 U.S.C. § 1961.

---

[16]The Court notes that plaintiff has not provided adequate documentation detailing the amounts paid late, and how interest was calculated for late-paid contributions for the weeks ending April 8, 2009 through April 15, 2009, April 29, 2009 through July 8, 2009, and July 29, 2009 through September 9, 2009. Given the nominal amount requested by plaintiff for those delinquent weeks, the Court awards the requested amount of $6.81. However, due to plaintiff's failure to provide documentation detailing the contribution amounts that were paid late for those given weeks, the Court is unable to calculate any additional interest that have accrued up until the date of the entry of judgment.

4. Liquidated Damages

Plaintiff requests liquidated damages for unpaid and underpaid contributions that were alleged in the Complaint, and liquidated damages for unpaid and late-paid contributions that became due after the Complaint was filed.

a) Delinquent Contributions Alleged in Complaint

Plaintiff is entitled to liquidated damages for unpaid, underpaid, and late-paid contributions pursuant to the CBAs (see Sessa Decl. Ex. B at 2) and ERISA. See 29 U.S.C. § 1132(g)(2)(c) (providing for an award of liquidated damages not to exceed 20% of the unpaid contributions).

Based upon defendant's failure to remit $1,846.50 in required contributions to the JIB Funds for the weeks ending August 26, 2009, and September 16, 2009 through September 30, 2009, and $49.59 in required contributions to the 401(k) Fund for the week ending August 26, 2009, the Court determines that defendant owes a total of $379.22 in liquidated damages, which represents 20% of the unpaid contributions alleged in the Complaint, calculated as follows:

| Liquidated Damages for Unpaid Contributions | | | |
|---|---|---|---|
| Category | | Unpaid Contributions | Liquidated Damages |
| JIB Funds | PHBP | $1,161.28 | $232.26 |
| | DEN | $126.15 | $25.23 |
| | ANN | $242.00 | $48.40 |
| | ECT | $13.47 | $2.69 |
| | VHUP | $202.41 | $40.48 |
| | NEBF | $101.19 | $20.24 |

| | | |
|---|---|---|
| **Total JIB Funds** | **$1,846.50** | $369.30 |
| **Total 401(k) Fund** | **$49.59** | $9.92 |
| **Total** | | $379.22 |

Based upon defendant's underpayment of contributions in the amount of $611.06 to the 401(k) Fund and the VHUP benefit plan for the weeks ending April 15 and 29, 2009, and May 6 and 20, 2009, the Court determines that defendant owes $122.21 in liquidated damages for these delinquent contributions, which represents 20% of the underpaid contributions, calculated as follows:

| Liquidated Damages for Underpaid Contributions | | |
|---|---|---|
| Category | Underpaid Contributions | Liquidated Damages |
| VHUP | $575.81 | $115.16 |
| 401(k) Fund | $35.26 | $7.05 |
| **Total** | **$611.06** | **$122.21** |

### b) Delinquent Contributions Accrued after Complaint was Filed

Based upon the Court's determination that plaintiff is entitled to damages for unpaid and late-paid contributions that accrued subsequent to the commencement of this lawsuit, plaintiff is also entitled to liquidated damages for those contributions. See 29 U.S.C. § 1132(g)(2)(c) (providing for an award of liquidated damages not to exceed 20% of the unpaid contributions); (Sessa Decl., Ex. B at 2, Ex. C at 19, Ex. I at 10).

Due to defendant's failure to remit $10,618.30 in required contributions to the JIB Funds for the weeks ending October 7, 2009 through November 18, 2009, and February 3, 2010 through

May 5, 2010, and $2,810.16 in required contributions to the 401(k) Fund for the weeks ending

January 6, 2010 through May 5, 2010, the Court, based on an independent review of the record,

finds that defendant owes a total of $2,685.69 in liquidated damages, which represents 20% of

the unpaid contributions that have accrued since the filing of the Complaint, calculated as

follows:

| Liquidated Damages for Unpaid Contributions | | | |
|---|---|---|---|
| Category | | Unpaid Contributions | Liquidated Damages |
| JIB Funds | PHBP | $6,459.04 | $1,291.81 |
| | DEN | $701.68 | $140.34 |
| | ANN | $1,694.00 | $338.80 |
| | ECT | $74.97 | $14.99 |
| | VHUP | $1,125.81 | $225.16 |
| | NEBF | $562.80 | $112.56 |
| **Total JIB Funds** | | **$10,618.30** | **$2,123.66** |
| **Total 401(k) Fund** | | **$2,810.16** | **$562.03** |
| **Total** | | | **$2,685.69** |

Additionally, based on defendant's late payment of contributions to the JIB Funds in the

amount of $4,987.34 for the weeks ending November 25, 2009 through January 27, 2010 (see

Adler Supp. Decl., Ex. A at 2, 4, 6, 8, 10, 12), and to the 401(k) Fund in the amount of $2,013.58

for the weeks ending September 23, 2009 through December 30, 2009 (id., Ex. A at 14), the

Court determines that defendant owes $550.69 total in liquidated damages on late-paid

contributions,[17] calculated as follows:

| Liquidated Damages for Late-Paid Contributions | | | |
|---|---|---|---|
| Category | | Amount Paid Late | Liquidated Damages[18] |
| JIB Funds | PHBP | $3,052.29 | $59.61 |
| | DEN | $331.62 | $6.48 |
| | ANN | $770.00 | $17.60 |
| | ECT | $35.44 | $0.69 |
| | VHUP | $532.01 | $10.39 |
| | NEBF | $265.98 | $53.20 |
| **Total JIB Funds** | | **$4,987.34** | **$147.97** |
| **Total 401(k) Fund** | | **$2,013.58** | **$402.72** |
| **Total** | | | **$550.69** |

Accordingly, pursuant to the CBAs and Section 1132(g)(2)(c) of ERISA, the Court

respectfully recommends that the Funds receive an award for liquidated damages in the total

---

[17]Plaintiff has not requested liquidated damages for late-paid contributions to the 401(k) Fund for the weeks ending April 8, 2009 through April 15, 2009, April 29, 2009 through July 8, 2009, and July 29, 2009 through September 9, 2009. As a result, the Court has not considered whether plaintiff is entitled to liquidated damages for these time periods.

[18]It appears that, in moving for a default judgment, plaintiff has miscalculated the amount of liquidated damages owed on account of late-paid contributions to the PHBP, DEN, ANN, and ECT benefit plans. For example, although plaintiff has determined that defendant owes $3,052.29 in late-paid contributions for the PHBP benefit plan, thus entitling plaintiff to $610.46 in liquidated damages, plaintiff, for a reason not apparent to the Court, only requests 20% of $298.05, which equals $59.61 in such damages. (See Adler Supp. Decl., Ex. A at 2, Ex. E). In any event, the Court has limited its analysis to those amounts requested by plaintiff and has not considered whether plaintiff is entitled to any amounts other than those requested in connection with this inquest. The figures in the column above labeled "Liquidated Damages" reflect only those amounts requested by plaintiff.

29

amount of $3,737.81, calculated as follows:

| Total Liquidated Damages | | |
|---|---|---|
| Category | | Liquidated Damages |
| Unpaid Contributions | Alleged in Complaint | $379.22 |
| | Accrued after Complaint filed | $2,685.69 |
| Underpaid Contributions | | $122.21 |
| Late-paid Contributions | | $550.69 |
| Total | | $3,737.81 |

### 4. Attorney's Fees and Costs

Plaintiff also requests reasonable attorney's fees and costs in connection with this action, pursuant to 29 U.S.C. § 1132(g)(2)(D), which provides that when an employee benefit fund prevails in a legal action, the defendant is liable for legal costs.

### a) Reasonable Attorney's Fees

When assessing whether legal costs are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d 182, 183-84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. Id. In Arbor Hill, the Second Circuit adopted the following factors to guide the court's inquiry as to what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service

properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases . . . .

Id. at 187 n.3 (citation omitted). A number of courts within the Second Circuit have applied these factors when awarding attorney's fees. See Manzo v. Sovereign Motor Cars, Ltd., No. 08 CV 1229, 2010 WL 1930237, at* 7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Lochren v. County of Suffolk, No. 01 CV 3925, 2008 WL 2039458, at *2 (E.D.N.Y. May 9, 2008); see also Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . ., the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . ., and other returns (such as reputation, etc.) the attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184; see also Heng Chan v. Sung Yue Tang Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007). In awarding attorney's fees, the Court is guided by the fact that default actions are relatively simple legal matters, while taking into account the attorney's degree of skill and the Court's own experience dealing with similar claims.

The next step in awarding attorney's fees is determining the reasonableness of the hours

expended by counsel. See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007). The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary. See, e.g., LaBarbera v. Frank J. Batchelder Transp. LLC, No. 08 CV 3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing Gierlinger v. Gleason,160 F.3d 858, 876 (2d Cir. 1998)); Bourgal v. Atlas Transit Mix, No. 93 CV 0569, 1996 WL 75290, at *7 (E.D.N.Y. Feb. 7, 1996).

In this case, plaintiff was represented by Cohen, Weiss, Simon, LLP (the "Firm"), which is located at 330 West 42nd Street, New York, N.Y. 10036-6976. In accordance with N.Y. State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), the Firm submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which the services were charged, along with the name of the attorney and a description of services performed. (See Adler Supp. Decl. ¶¶ 26-33, Ex. D). Plaintiff seeks a combined total of attorney's fees and costs in the amount of $9,103.77, representing services performed by the Firm as of May 14, 2010 in connection with plaintiff's efforts to obtain this judgment. (Id. ¶¶ 26-28).

The requested attorney's fees totals $8,459.50, and the time was billed at the following rates: 1) $225.00 per hour for legal work performed by Michael S. Adler, Esq., an associate engaged in labor and employee benefits practice since 2003; 2) $225.00 per hour for legal work performed by Zachary N. Leeds, Esq., an associate practicing labor and employment law since 2005; and 3) $80.00 per hour for administrative work performed by Rodion Tadenev, a paralegal. (Id. ¶¶ 26-27, 31-32).

Based on the Court's knowledge of the rates generally charged for this type of work in connection with an ERISA default, the Court finds that the rate of $225.00 per hour for the legal

32

work performed by Mr. Adler and Mr. Leeds is within the range of billing rates of similarly experienced attorneys in this district working on comparable matters. See, e.g., Finkel v. Triple A Group, Inc., 2010 WL 1688359, at *9 (determining that hourly rates for associates ranging from $200.00 to $225.00 are reasonable in connection with an ERISA inquest); Finkel v. Jones Lang LaSalle Americas, Inc., No. 08 CV 2333, 2009 WL 5172869, at *5 (E.D.N.Y. Dec. 30, 2009) (finding that hourly rates of $235.00 for senior associates and $225.00 for junior associates were reasonable); Finkel v. Rico Electric, Inc., No. 05 CV 2145, 2009 WL 3367057, at *11 (E.D.N.Y. Oct. 16, 2009) (awarding Mr. Leeds and another attorney with five years of employee benefits experience the rate of $225 per hour in a similar ERISA inquest).

Accordingly, the Court respectfully recommends that the requested rate of $225.00 per hour for both Mr. Adler's and Mr. Leeds's time be approved.

With regard to the rate charged by Mr. Tadenev for his paralegal work, the Court respectfully recommends that the requested rate of $80.00 per hour be approved as reasonable and appropriate. See id. (finding a rate of $75.00 to $80.00 per hour for paralegal work to be reasonable in an ERISA default action); Finkel v. Jones Lang LaSalle Americas, Inc., 2009 WL 5172869, at *5 (finding an $80.00 per hour rate for paralegal work in an ERISA default action to be reasonable); LaBarbera v. United Ornamentals, Inc., No. 08 CV 2573, 2009 WL 187574, at *9 (E.D.N.Y. Jan. 26, 2009) (same).

Having determined the reasonable rates to charge in this case, the Court now turns to the reasonableness of the number of hours billed in this matter. As previously discussed, the number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary. See, e.g., LaBarbera v. Frank J. Batchelder Transp., 2009 WL 240521, at *4. If the number of hours billed are determined to be unreasonable, the court may

33

exclude that portion of hours it finds to be excessive or unreasonable in its attorney's fees calculations. See id.

Based on the contemporaneous billing records submitted to the Court in connection with the instant motion, the Firm seeks compensation for 58.80 hours of work on this matter from August 31, 2009 to April 30, 2010. The Firm's work on this case included drafting and revising the Complaint, preparing for the inquest hearing, and drafting plaintiff's Motion for Default Judgment, and the materials annexed thereto, and preparing supplemental declarations updating the damages sought. Having carefully examined the billing records, the Court finds that the number of hours charged in this matter is high given the amount of work performed and the fact that the case involves a relatively straightforward ERISA claim. While the Firm filed two separate affirmations in connection with this inquest, and there was some additional time required due to the need to calculate damages for the various benefit plans, the Court nonetheless finds that a ten percent across-the-board reduction of billed hours is appropriate.[19]

Among the reasons supporting such a reduction is that the Firm reported the cumulative time spent on several tasks rather than describing the time spent on each individual activity.[20] Such reporting, frequently referred to as block-billing, see Rodriguez v. McLoughlin, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999), makes it impossible for the Court to determine whether the hours

---

[19]In recommending this reduction, the Court notes that the papers submitted were somewhat disorganized and at times lacked appropriate citations to supporting documentation and relevant authority.

[20]For example, the Firm reported that it spent 1.90 hours in the following manner: "Prepare for inquest; Office conference with JRG regarding same; telephone conference with K. Duffy and C. Sessa regarding inquest testimony; email K. Duffy regarding same; prepare supplemental declarations in support of default motion." (Adler Supp. Decl., Ex. D at 3). Since the Firm provided no breakdown of time spent among the tasks, the Court cannot determine the reasonableness of the time spent on each specific task.

34

expended on each task within the time entry were reasonable, since the Firm did not indicate how much time was spent on each individual task. See Molefi v. Oppenheimer Trust, No. 03 CV 5631, 2007 WL 638547, at *8 (E.D.N.Y. Feb. 15, 2007) (reducing award of attorney's fees by fifteen percent, in part for block-billing). Additionally, certain entries in the Firm's billing records are unclear. For example, the Firm reported, without explanation, a telephone conference with U.S. Magistrate Judge Azrack's chambers regarding this inquest, even though Judge Azrack is not assigned to this case. (See Adler Supp. Decl., Ex. D at 27).

Moreover, the one hour and twenty-four minutes spent checking the Electronic Case Filing System ("ECF") is excessive. It is unreasonable, without additional explanation from the Firm, to charge $112.00 for a fairly simple task such as checking the ECF docket. Furthermore, the Court notes that plaintiff's submissions contain numerous typographical errors,[21] mathematical errors,[22] various inconsistencies,[23] and largely boilerplate assertions.[24] See LaBarbera v. Frank J. Batchelder Transp., 2009 WL 240521, at *4-5 (reducing counsel's 38.1 hours by forty five percent in part because plaintiff's submissions contained significant errors and the complaint appeared largely boilerplate); Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *5 (reducing counsel's 55.17 hours by twenty-five percent because the case was a straightforward ERISA inquest and counsel's submissions contained careless errors).

---

[21] See, e.g., Adler Supp. Decl. ¶ 8, at 4 ("January 6, 1 [sic] 2010").

[22] See, e.g., supra notes 10, 13, and 18.

[23] See, e.g., supra notes 2 and 4.

[24] For example, paragraphs 7 through 14 of the Declaration of Michael S. Adler in Support of Plaintiff's Motion for Default Judgment, filed on January 28, 2010, is largely identical to paragraphs 3 through 10 of his Supplemental Declaration filed on May 14, 2010.

Accordingly, based on the hourly rates set forth above, and the Court's ten percent across-the-board reduction of hours billed on this matter, the Court respectfully recommends that plaintiffs be awarded $7,613.55 in attorney's fees, calculated as follows:

|  | Requested Hours | Requested Hours with 10% Reduction | Rate Charged | Total Charges |
|---|---|---|---|---|
| Adler | 25.80 hours | 23.22 hours | $225.00 | $5,224.50 |
| Leeds | .10 hours | .09 hours | $225.00 | $20.25 |
| Tadenev | 32.90 hours | 29.61 hours | $80.00 | $2,368.80 |
| **Total** |  |  |  | **$7,613.55** |

b) Reasonable Costs

Plaintiff also requests $644.27 in costs for filing fees, service fees, photocopying, postage costs, and document binding. (See Adler Supp. Decl., Ex. D). Based on a review of the record, the Court finds these costs to be reasonable, and respectfully recommends that plaintiff be awarded $644.27 in costs. See Finkel v. Triple A Group, Inc., 2010 WL 1688359, at *9 (awarding $818.53 in costs for filing fees, service, postage, and photocopying).

CONCLUSION

The Court respectfully recommends that plaintiff's motion for entry of a default judgment be granted, and that plaintiff be awarded the following damages from defendant: 1) $15,324.55 in unpaid contributions to the JIB Funds and the 401(k) Fund; 2) $611.06 in underpaid contributions to the VHUP benefit plan, and the 401(k) Fund; 3) $416.55 in interest on the unpaid, underpaid, and late-paid contributions; 4) $3,737.81 in liquidated damages; and 5) $8,257.82 in attorney's fees and costs, for a total award of $28,347.79, plus any additional interest that accrues from the date of this Report and Recommendation until the entry of judgment, together with post-judgment interest pursuant to 28 U.S.C. § 1961. Should plaintiff seek interest to be awarded on unpaid and late-paid contributions to the NEBF plan, plaintiff shall file supplemental papers as detailed herein within two weeks of this Report and Recommendation.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      August 11, 2010

Cheryl L. Pollak
United States Magistrate Judge

37